## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANIA EVANS, | : | Civil No. 1:24-CV-00646 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CUMBERLAND COUNTY, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

### <u>MEMORANDUM</u>

It took Plaintiff, Ania Evans ("Evans"), nineteen months from the date she filed her original complaint to realize that her complaint details a factual background that has no basis in reality. She now seeks leave to file a second amended complaint. The facts detailed in this proposed pleading hardly resemble those in the original. For this reason and others, Defendant, Cumberland County ("the County"), opposes Evans's motion. Upon consideration of the parties' arguments and the circumstances of this case, the court determines that amendment is unwarranted. Therefore, Evans's motion will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

According to the original complaint, Evans began working for the County Clerk's Office as a clerk in 2019. (Doc. 1, ¶ 6.) Evans allegedly had difficulty "concentrating, working, and caring for herself" due to her suffering chronic migraines. (*Id.* ¶ 7.) Sometime between 2019 and 2022, Evans sought reasonable

accommodations due to her condition, including "occasional telecommuting and adjusted work hours."  (*Id.* ¶ 8.)  The County allegedly provided these accommodations "without issue."  (*Id.*)  In August 2022, however, Evans's supervisor revoked approval of the accommodations and, subsequently, subjected Evans to unwarranted adverse treatment due to her disability.  (*Id.* ¶ 9.)  This adverse treatment allegedly included "increased workload, unjustified disciplinary actions, and hostile treatment in the workplace."  (*Id.* ¶ 11.)  Evans's attempts to address this alleged discriminatory treatment were fruitless.  She allegedly attempted to discuss the necessity of her accommodations with the County to no avail.  (*Id.* ¶ 10.)  She also allegedly filed a formal complaint with the County's Human Resources Department, similarly to no avail.  (*Id.* ¶ 12.)  On December 1, 2022, the County terminated Evans's employment "purportedly due to performance issues."  (*Id.* ¶ 13.)  Though, Evans claims that her employment was terminated due to her disability, her requests for accommodation, and in retaliation for her complaints.  (*Id.*)

Evans's proposed amended complaint tells an entirely different story. According to that pleading, the events giving rise to Evans's claims occurred between May 2023 and July 2023.[1]  (Doc. 26-1, ¶¶ 12–15.)  In May 2023, Evans

---

[1] The proposed amended complaint does not allege when Evans started working for the County. The County avers, based on Evans's offer letter, that her employment began in May 2023.  (Doc. 31, p. 4 (citing Doc. 31-4).)

requested one accommodation, the ability to work remotely.  (*Id.* ¶ 12–13.)  She sought this arrangement as an accommodation for her bipolar disorder.  (*Id.* ¶ 13.) The County allegedly denied Evans's request on June 7, 2023.  (*Id.*)  This denial allegedly led to a deterioration of Evans's health that forced her to step away from her job between June 20, 2023, and July 7, 2023.  (*Id.* ¶ 15.)  During this absence, the County allegedly threatened Evans's job and subjected her to unfair treatment, both of which ultimately led to her constructive discharge.[2]  (*Id.* ¶ 16.)

Notwithstanding the entirely different factual averments in the two complaints, Evans alleges the same types of disability-discrimination claims in both the original complaint and the proposed amended complaint.  She alleges a disability-discrimination claim in violation of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA").  (Doc. 1, ¶¶ 14– 15, 18–19; Doc. 26-1, ¶¶ 18–26, 50–56).  She alleges a retaliation claim in violation of the ADA and PHRA.  (Doc. 1, ¶¶ 16–17, 20–21; Doc. 26-1, ¶¶ 41–49, 57–63).  And she alleges a failure-to-accommodate claim under the ADA.  (Doc. 1, ¶ 15; Doc. 26-1, ¶¶ 27–40.)

Evans filed her original complaint on April 12, 2024.  (Doc. 1.)  The case then sat dormant for about two months.  Due to this inactivity, the court ordered

---

[2] The proposed amended complaint does not allege when Evans's employment with the County ended.

3

Evans to provide a status report by June 25, 2024.  (Doc. 6.)  She never did.  On August 16, 2024, the court issued an order to show cause as to why the case should not be dismissed for failure to prosecute, Doc. 7, to which Evans timely responded, Doc. 9.  In that response, Evans's previous counsel stated that the delay in prosecuting this case was caused by "significant administrative turnover . . . of key staff members" at counsel's firm and "substantial issues with" the firm's "calendar system."  (Doc. 9, p. 1.)[3]  The explanation was that these issues caused previous counsel to miss deadlines and not properly track the service of the complaint.  (*Id.*).

Upon review of this response, the court determined that good cause existed to extend the deadline to serve the complaint.  (Doc. 10.)  Evans successfully served the complaint on September 16, 2024.  (Doc. 14, p. 1.)  The County filed an answer on October 4, 2024.  (Doc. 12.)  Shortly thereafter, Plaintiff's current counsel was substituted for her previous counsel.  (Doc. 13.)

On February 3, 2025, this case was randomly selected for a mandatory referral to court-annexed mediation pursuant to Standing Order 04-3.  (Doc. 15, p. 2.)  Mediator Joseph Barrett subsequently reported on March 12, 2025, that mediation did not result in a settlement.  (Doc. 22.)

Following mediation, the court convened a telephonic status conference to set a case management schedule.  The court memorialized the deadlines set during

---

[3] For ease of reference, the court uses the page numbers from the CM/ECF header.

that conference in a case management order.  (Doc. 25.)  Particularly relevant here, the court set November 14, 2025, as the deadline to amend the complaint.  (*Id.*)

On that day, Evans filed the instant motion for leave to amend the complaint, followed by a brief in support.  (Docs. 26 & 29.)  The County responded, in turn, with a brief in opposition.  (Doc. 31.)  Evans did not file a reply brief.  The court stayed the case management deadlines pending resolution of Evans's motion. (Doc. 30.)  The motion is now ripe for review.

### JURISDICTION

The court has subject matter jurisdiction over Evans's federal claims, pursuant to 28 U.S.C. § 1331, and her state law claims, pursuant to 28 U.S.C. § 1367.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b).

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(1) allows plaintiffs to amend their complaint as a matter of course within 21 days of serving it or the earlier of defendant's service of a responsive pleading or certain Rule 12 motions.  Fed. R. Civ. P. 15(a)(1).  Outside those time periods, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The decision to grant leave is "committed to the District Court's sound discretion."  *Cureton v. NCAA*, 252 F.3d 267, 276 (3d Cir. 2001).

In exercising this discretion, the court must heed Rule 15's mandate that leave should be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Even so, this "directive in favor of amendment," *Mullin v. Balicki*, 875 F.3d 140, 150 (3d Cir. 2017), is not without its limits. A court may reasonably deny leave to amend "based on" the so-called *Foman* factors: "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility." *Id.* at 149; *accord Foman*, 371 U.S. at 182. Of these factors, "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413–14 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).

**DISCUSSION**

The County argues that three *Foman* factors justify denying Evans's motion. It argues that (1) amendment would be futile; (2) Evans's request was unduly delayed; and (3) allowing the amendment would prejudice the County. The court considers each factor in turn.

**A. Futility**

An amendment is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In assessing this factor, the court "applies the same standard of

6

legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). One reason amendment could be futile is if the amended complaint would be unable to survive a "motion to dismiss on the basis of the statute of limitations." *Garvin v. City of Philadelphia*, 354 F.3d 215, 222 (3d Cir. 2003). This is the reason upon which the County relies. Specifically, the County argues that Evans's claims, as amended, would be time-barred for being filed more than 90 days after she received her EEOC right-to-sue letter.[4] (Doc. 31, p. 13.)

Under federal law, a plaintiff must file an ADA discrimination claim in federal court within 90 days of receipt of an EEOC right-to-sue letter. *Percival v. Zimmerman*, No. 24-2232, 2025 WL 1604502, at *2 (3d Cir. June 6, 2025) (citing 42 U.S.C. § 2000e-5(f)(1)). This 90-day period represents a "strict statute of limitations." *Id.* at *3; *accord Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). It is undisputed that Evans received her EEOC right-to-sue letter on January 17, 2024. (Doc. 31-1, p. 1.) Evans did not move to amend her complaint until November 14, 2025, long after the 90-day limitations period expired.

---

[4] The County does not argue that Evans's PHRA claims would be untimely, so the court will not consider this point. In any event, amendment still would be unwarranted even if Evans's PHRA claims did not face the same timeliness problem her federal claims do. That is because, as articulated below, additional factors warrant denial of Evans's motion for leave to amend.

7

Therefore, Evans's proposed amended complaint will be timely only if it relates back to the original under Rule 15(c). *Spicer v. Villanova Univ.*, No. 06-cv-1411, 2006 WL 3486465, at *1 (E.D. Pa. Dec. 1, 2006); *Bernstein v. Nat'l Liberty Int'l Corp.*, 407 F. Supp. 709, 713 (E.D. Pa. 1976); s*ee Anderson v. Bondex Int'l, Inc.*, 552 F. App'x 153, 156 (3d Cir. 2014) ("Where a claim is barred by the statute of limitations, amendment is only permitted if the proposed amended complaint 'relates back to the date of the original pleading' pursuant to Rule 15(c)."). The only provision of Rule 15(c) that is applicable here is Rule 15(c)(1)(B). That rule states, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

Applying this provision "entails a 'search for a common core of operative facts in the two pleadings.'" *Glover v. FDIC*, 698 F.3d 139, 145 (3d Cir. 2012) (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)). The primary purpose of this search is to determine whether the non-movant had "fair notice of the general fact situation and the legal theory upon which the amending party proceeds." *Id.* at 146 (quoting *Bensel*, 387 F.3d at 310). So, for instance, an amended pleading will relate back if it "restate[s] the original claim with greater particularity or amplif[ies] the factual circumstances surrounding the pertinent

conduct, transaction or occurrence in the preceding pleading." *Anderson*, 552 F. App'x at 157 (quoting *Bensel*, 387 F.3d at 310). Conversely, an amendment will *not* relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Wirt v. Bon-Ton Stores, Inc.*, 134 F. Supp. 3d 852, 859 (M.D. Pa. 2015) (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)).

Applying these principles, the court cannot conclude that the complaint and proposed amended complaint share a common core of operative facts. The set of operative facts in each is wholly dissimilar from the other. The differences touch upon virtually every important topic of this case: (1) the time period when Evans worked for the County; (2) the duration of Evans's employment; (3) Evans's claimed disability; (4) the accommodations Evans sought; (5) the County's response to Evans's accommodations request; (6) Evans's response to perceived discrimination; and (7) the nature of Evans's employment termination. These differences do not represent an attempt to clarify or expand upon previous allegations; they represent a complete disavowal of the previous allegations. The court has little difficulty concluding that the proposed amended complaint's facts "differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650.

9

Under these circumstances, Evans's proposed amended complaint does not satisfy Rule 15(c)(1)(B) and does not relate back to the date of her original complaint. Given this, amendment would be futile, because the ADA claims contained in Evans's proposed amended complaint would be time-barred.

## B. Undue Delay

The thrust of the undue-delay analysis is considering "the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 273. Indeed, the court must consider what caused the "gap between when amendment bec[ame] possible and when it [wa]s actually sought." *Mullin*, 875 F.3d at 151. A delay between those two points in time is "undue" when it "is protracted and unjustified." *Id.*

Evans provides no reason—and the court cannot think of one—as to why the information included in the proposed amended complaint could not have been included in the original complaint. The purpose of amending the pleading is to correct the basic factual allegations of the case. It is beyond belief that Evans would not have known these basic facts when she filed her original complaint. For example, Evans had to have known before this case started what her claimed disability was, what her dates of employment were, and how she came to leave the County's employment. These are the fundamental facts that compelled Evans to file a federal lawsuit.

Ultimately, then, Evans could have and should have amended her complaint as soon as she filed it.  Instead, it took her 19 months to do so.  The duration of this delay alone is troubling.  Courts in this circuit have found delays of shorter duration to be undue.  *In re EP Liquidation, LLC*, 583 B.R. 304, 317–18 (Bankr. D. Del. 2018) (thirteen months); *College v. Synergis Educ. Inc.*, No. 14-cv-06966, 2015 WL 9474654, at *2–3 (E.D. Pa. Dec. 29, 2015) (five to seven months); *Zeigenfuse v. Kemp Assocs., Inc.*, No. 14-cv-05954, 2015 WL 7568259, at *3–4 (E.D. Pa. Nov. 25, 2015) (three months); *Williams v. Cost-U-Less, Inc.*, No. 2011-cv-025, 2014 WL 2993667, at *4–5 (D.V.I. July 3, 2014) (seventeen months); *Peele v. City of Philadelphia*, No. 08-cv-4661, 2010 WL 11707364, at *1 n.1 (E.D. Pa. Mar. 5, 2010) (nine months).

Even more troubling, however, is the fact that Evans offers no explanation for why it took her so long to seek leave to amend.  This silence "is especially conspicuous given that the factual foundation for [her] claim[s] was long-known," *McCarthy v. Komori Am. Corp.*, 200 F.R.D. 507, 508 (E.D. Pa. 2001), and that she has exhibited a pattern of dilatoriness in prosecuting this lawsuit.  The most Evans provides in her brief is the conclusory statement that "there is no . . . undue delay . . . present."  (Doc. 29, p. 4.)  Without any explanation for her conduct, the court must conclude that Evans's 19-month delay in seeking leave to amend is undue.

### C. Prejudice

The prejudice factor focuses on the hardships the non-movant would suffer if an amendment were permitted.  *Cureton*, 252 F.3d at 273.  The analysis considers "whether allowing an amendment would result in," among other prejudicial outcomes, "additional discovery, cost, and preparation to defend against new facts or new theories."  *Id.*  Several considerations are material here.

On the one hand, the County credibly explains that permitting Evans's proposed amendment would require it to engage in a fair amount of additional discovery.  (Doc. 31, pp. 11–12.)  Specifically, this discovery would be necessary for the County to explore the factual bases for Evans's new theory of constructive discharge, *id.* at 11, and her bipolar disorder, s*ee id.* at 12.  The County also credibly avers that it would need to engage an expert to opine on Evans's bipolar disorder, which would be accompanied by expert discovery.  (*Id.* at 12.)  These are not insignificant endeavors, and the County credibly asserts that it would essentially need to relitigate this matter due to the substantial changes to the facts giving rise to Evans's claims.  (Doc. 31, p. 12.)  Such drastic changes support a finding of prejudice.  *See Luciani v. City of Philadelphia*, 643 F. App'x 109, 111–12 (3d Cir. 2016) ("[W]e have found previously that changing the legal and factual basis of a claim can create undue prejudice."); *Cornell*, 573 F.2d at 824 (finding prejudice when "the legal and factual matters in dispute changed drastically").

On the other hand, the court recognizes that "the need for additional discovery does not conclusively establish prejudice." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990).  Moreover, the County does not explain how "it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." *Betchel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of V.I., Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).  Thus, there is no basis for the court to conclude that the County would not fairly be able to litigate this case moving forward.[5]

Even considering these mitigating factors, however, the court finds that the additional costs of relitigating this case establish prejudice that weighs in favor of denying Evans's motion.  This prejudice was entirely avoidable.  Had Evans and her former counsel filed an accurate complaint, the County could have focused its discovery on the actual facts of this case.  It also could have avoided expending resources on mediation that was premised on inaccurate facts.  It is inexplicable and perplexing how the original complaint could have been filed at all given its plentiful and patent inaccuracies.  Evans should have reviewed the complaint for

---

[5] The fact that Evans filed her motion to amend about six-and-a-half weeks before the fact discovery deadline does not definitively establish prejudice, since that deadline could be extended. *Williams v. City of York*, No. 1:15-cv-0493, 2016 WL 2610007, at *6 (M.D. Pa. May 6, 2016).

accuracy before her former counsel filed it.  Her former counsel should have ensured that "the factual contentions [in the complaint] have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  This is basic due diligence that both Evans and her former counsel at best overlooked or at worst disregarded. The costs of these failures should not now be passed on to the County after it has spent nearly two years litigating this case in good faith.

**CONCLUSION**

In conclusion, the futility of amendment, Evans's undue delay in seeking leave to amend, and the prejudice that amendment would cause the County all weigh against allowing the filing of the proposed amended complaint.  Therefore, the court will deny Evans's motion for leave to amend.  An appropriate order will issue.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: March 16, 2026